UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA MIKULSKY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BLOOMINGDALE'S, LLC and BLOOMINGDALES.COM, LLC,<br><br>    Defendants. | Case No.: 3:23-cv-00425-L-VET<br><br>**ORDER**<br>**(1) DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br>**(2) GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>[ECF No. 32] |

Pending before the Court is Defendants' Bloomingdales.com, LLC and Bloomingdales.com, LLC's (collectively, "Defendants" or "Bloomingdales") motion to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim. (ECF No. 32.) Erica Mikulsky ("Plaintiff") opposed, (ECF No. 33), and Defendants replied, (ECF No. 35). The Court decides the matter on the papers submitted without oral argument. *See* Civ. LR 7.1(d.1). For the reasons set forth below, Defendants' motion to dismiss for lack of personal jurisdiction is denied and motion to dismiss for failure to state a claim is granted, with leave to amend.

## I. BACKGROUND

According to the allegations in the amended complaint, Defendants use third-party vendors, such as the company "FullStory," to embed "session replay" software code on the bloomingdales.com website. (ECF No. 35 at 2.) This software collects information about a visitor's navigation of the website such as mouse movements, clicks, keystrokes, URLs of web pages visited, and other electronic communications in real-time. (*Id*.) The complaint alleges that Defendants and the third-party venders such as FullStory use the data to "recreate website visitors' entire visits to www.bloomingdales.com" and "create a video replay of each visitor's behavior on the website and provide it to Bloomingdale's for analysis." (*Id*.) The complaint compares Bloomingdale's use of the session replay code as "the electronic equivalent of a stranger 'looking over the shoulder' of each visitor to the Bloomingdale's website for the entire duration of their website interaction." (*Id*.)

Plaintiff alleges that Bloomingdale's website is "integrated" with its physical stores in California. (*Id*. at 4.) Plaintiff alleges that Defendants use the "website to funnel California customers to Bloomingdale's California stores" and that the "website is further integrated with the operations of its brick-and-mortar stores in California." (*Id*. at 3-4).

Plaintiff is a California resident who claims she visited both bloomingdales.com and Bloomindale's brick-and-mortar stores while in California and was "a victim of Defendants' unlawful monitoring, recording, and collection of Plaintiff's Website Communications." (*Id*. at 2–3, 13.) Plaintiff brings two claims: (1) California Invasion of Privacy Act ("CIPA") Section 631 for unlawful wiretapping and interception of electronic communications; and (2) common law intrusion upon seclusion. (*Id*. at 21–24.)

Defendants previously moved to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF No. 13.) This Court dismissed the action for lack of personal jurisdiction. (ECF No. 25.) In pertinent part, this court held that "[t]he claims here arise solely out of Plaintiff's browsing of Defendants' website and Defendants' use of session replay code. The 'something more' that establishes Defendants' relationship

1  with the forum—the physical sale of merchandise in California—does not underlie, or
2  even relate to, Plaintiff's claim of digital eavesdropping. Plaintiff has thus failed to show
3  any connection between Defendants' forum-related contacts and the harm she suffered."
4  (*Id*. at 5.)  This Court, while noting "the Court's skepticism that pleading additional facts
5  could cure the jurisdictional deficiencies noted above," allowed Plaintiff to amend to
6  plead additional jurisdictional facts.  (*Id*.)

7  Plaintiff submitted an amended complaint.  (ECF No. 27.) Defendants, both
8  citizens of Ohio and New York, now move to dismiss the complaint for lack of personal
9  jurisdiction and for failure to state a claim.  (ECF No. 32.)

10  **II.    LEGAL STANDARD**
11  **A. Personal Jurisdiction**

12  A complaint may be dismissed for lack of personal jurisdiction under Federal Rule
13  of Civil Procedure 12(b)(2). "Personal jurisdiction over a nonresident defendant is tested
14  by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of
15  the applicable state long-arm statute. Second, the exercise of jurisdiction must comport
16  with federal due process." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th
17  Cir. 1994). California's long-arm statute provides that a court "may exercise jurisdiction
18  on any basis not inconsistent with the Constitution of this state or of the United States."
19  Cal. Civ. Proc. Code § 410.10. This statute allows courts to exercise personal jurisdiction
20  within the limits of due process. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857,
21  863 (9th Cir. 2003). It follows that compliance with due process satisfies both parts of the
22  test for personal jurisdiction.

23  Due process demands that a nonresident defendant have "certain minimum
24  contacts" with the forum "such that the maintenance of the suit does not offend
25  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.,*
26  *Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). This "minimum
27  contacts" requirement can be satisfied by establishing either general or specific
28

jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). Plaintiff only alleges specific jurisdiction over Defendants.

The Ninth Circuit employs a three-part test to determine whether a party is subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

"If the plaintiff succeeds in satisfying both of the first two prongs [of the test for minimum contacts], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "[W]here, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. That is, the plaintiff need only demonstrate facts that support a finding of jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In determining whether Plaintiff has met this burden, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011), but "conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor," *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### B. Failure to State a Claim

A 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).[1] A pleading must contain, in part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### C. Leave to Amend

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in

---

[1] Unless stated otherwise, internal ellipses, brackets, citations, and quotation marks are omitted from citations.

denying leave to amend where the amendment would be futile." *Id.* "The district court's decision to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *City of Los Angeles v. San Pedro Boat Work*, 635 F.3d 440, 454 (9th Cir. 2011).

## III. DISCUSSION

### A. Personal Jurisdiction

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix*, 647 F.3d at 1228. While they are distinct concepts, "[a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Burger King*, 471 U.S. at 474–75).

In the context of internet-based activity, "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). "But operating a website 'in conjunction with "something more"—conduct directly targeting the forum—is sufficient' to satisfy the express aiming prong." *Id.* (quoting *Mavrix*, 647 F.3d at 1229). The sale of a physical product into the forum via an interactive website qualifies as the "something more" to satisfy purposeful availment as long as the sale occurred as part of the defendant's regular course of business and the defendant exercised some level of control over the ultimate distribution of its product. *Id.* at 1094.

This Court previously found that Plaintiff's allegations that Defendants operate the interactive website www.bloomingdales.com, which allows users to purchase merchandise to be delivered or picked up in California, are sufficient to meet the first prong of the specific jurisdiction test. (ECF No. 25 at 4.)  The Court does not disturb its prior holding, nor do Defendants contest this conclusion in their motion. (ECF No. 32 at

14 n.3.) Thus, Defendants have purposefully availed themselves in California and the first prong of the specific jurisdiction test is satisfied.

"The second prong of the specific jurisdiction inquiry requires that a plaintiff's claims 'arise out of or relate to the defendant's contacts with the forum.'" *Herbal Brands, Inc.*, 72 F.4th at 1096 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). There must be some "relationship among the defendant, the forum, and the litigation." *Ford*, 141 S. Ct. at 1028.

This Court previously found the relationship between Defendants' contacts with the forum and the litigation lacking. (ECF No. 25 at 4.) The court found that:

> The claims here arise solely out of Plaintiff's browsing of Defendants' website and Defendants' use of session replay code. The 'something more' that establishes Defendants' relationship with the forum—the physical sale of merchandise in California—does not underlie, or even relate to, Plaintiff's claim of digital eavesdropping. Plaintiff has thus failed to show any connection between Defendants' forum-related contacts and the harm she suffered. Accordingly, this Court lacks personal jurisdiction over Defendants. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

(*Id*. at 4-5.)

Plaintiff bolsters her case with additional jurisdiction allegations attempting to tie Defendants' contacts with the forum with the claims at issue. Plaintiff claims that she sufficiently alleges "a nexus between retail sales from Bloomingdale's brick-and-mortar stores in California and the use of Bloomingdale's website in California." (ECF No. 33 at 8.) Plaintiff alleges that:

> In addition to the ability to use its website to funnel California customers to Bloomingdale's California stores, Bloomingdale's website is further integrated with the operations of its brick-and-mortar stores in California, by offering numerous unified services, including, as noted above: (1) on-line booking of appointments at brick-and- mortar Bloomingdale's stores, including those stores located in California; (2) enabling customers to purchase goods via the website for pick-up at Bloomingdale's brick- and-mortar store(s), including those stores located in California; (3) advertising opportunities to enable customers to view and/or participate in in-store events through Bloomingdale's website ("Our in-store

> events have gone virtual! Mark your calendar for upcoming events and check out our records of past demos, discussions and styling sessions with some of our favorite designers and tastemakers"); (4) offering appointments with stylists for both on-line and in-store consultations; and (5) other integrated operations. As a result of this integration, Bloomingdale's website acts as a conduit to additional sales and services available in its 16 brick-and- mortar stores in California. Stated another way, Bloomingdale's website operations and its operation of the brick-and-mortar stores in California constitute an integrated single business operating in the State of California.

(ECF No. 27 at 3-4.)

The Supreme Court's decision in *Ford Motor Co.* is instructive. In *Ford Motor Co.*, accidents involving Ford vehicles occurred in the States of Minnesota and Montana. *Id*. at 1023. Ford moved to dismiss the suits, filed in each of the respective states, for lack of personal jurisdiction. *Id*. Neither of the cars were originally purchased in either Minnesota or Montana, nor had they been designed or manufactured in those states and had only reached the states via the secondary market. *Id*. While Ford acknowledged they had purposefully availed themselves of the privilege of conducting activities in both places, they argued that their activities in those states were not sufficiently connected to the suits such that the claims arose out of or related to the defendant's contacts with the forum. *Id*. at 1026. The Court rejected the view that the relationship between the Defendants contacts with the state and the litigation must be "a strict causal relationship," reasoning that while the "arise out of" clause requires a causal relationship, the "relate to" clause requires less of a strict causal relationship to find personal jurisdiction. *Id*. Rather, the Court found it sufficient that Ford "serves a market for a product in the forum State and the product malfunctions there," regardless of the fact that specific cars that malfunctioned were bought out of state. *Id*. at 1027. The Court found that there was a "strong relationship among the defendant, the forum, and the litigation" because "Ford had systematically served a market" in those states. *Id*. at 1028.

Here, Plaintiff adequately alleges, at the pleading stage, that their claims "arise out of or relate to the defendant's contacts with the forum." *Id*. at 1026. Plaintiff alleges that

Defendants do not run the website in which the session replay code is used in isolation from their California based activities, but instead it is "integrated" with their brick-and-mortar operations that occur in California. Plaintiff alleges that the website "acts as a conduit to additional sales and services available in its 16 brick-and- mortar stores in California." (ECF No. 27 at 3-4.) As such, use of the session replay code relates to Defendants' California based operations as the purpose of collecting the data is, at least in part, to support in-store operations. Plaintiff gives numerous examples on how the operation of the website (of which is potentially optimized via the collection of session replay data) supports in-store operations, including "funnel[ing] California customers to Bloomingdale's California stores," "on-line booking of appointments at brick-and-mortar Bloomingdale's stores," "enabling customers to purchase goods via the website for pick-up at Bloomingdale's brick- and-mortar store(s)," and "offering appointments with stylists for both on-line and in-store consultations." (*Id.*) Therefore, Plaintiff has adequately plead that that her claims "relate to" Defendants' contacts with California.

Having satisfied the first two prongs of the specific jurisdiction test, the burden shifts to Defendants to show it would be unreasonable for the Court to exercise specific jurisdiction in this case. Defendants offer no argument on this prong, and thus has not met its burden.

Defendants further argue that Plaintiff's allegations "impermissibly group Bloomingdale's, LLC and Bloomingdales.com, LLC together." (ECF No. 32 at 17.) However, "[t]here is no flaw in a pleading, however, where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). Here, Plaintiff adequately alleges actions taken in concert between Bloomingdale's, LLC and Bloomingdales.com, LLC.

**B. <u>Failure to State a Claim</u>**

    **a. First Cause of Action- Violation of the California Invasion of Privacy Act, Cal Penal Code § 631**

Section 631 of CIPA prohibits four specific acts of wiretapping. It provides, in relevant part:

> (a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner,
>
> > (1) intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
> >
> > (2) who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or
> >
> > (3) who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or
> >
> > (4) who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,
>
> is punishable [under this Section].

Cal. Penal Code § 631(a) (subsections added and formatted for clarity) ("Section 631").

Plaintiff alleges that Defendants violated Section 631 through their "business practice of injecting Session Replay Code [] to access, intercept, learn the contents of and collect Plaintiff and Class members' personally identifiable information and other data." (ECF No. 27 at 22.) Further, they argue that Defendants violated Section 631 by having "wrongfully, negligently and/or intentionally, aided, abetted, conspired with and/or employed the Session Replay Providers, including but not limited to FullStory, to

unlawfully and without the consent of all parties recorded, read and/or otherwise gain access to the electronic communication(s) of Plaintiff and Class members." (*Id*.)

Defendants make two arguments for why this claim should be dismissed. First, they argue that the claim is foreclosed by the party exception where the recording is by one of the participants. (ECF No. 35 at 9.) Second, they argue that Plaintiff's communications were not intercepted as required under CIPA because Plaintiff's activity on Defendants' website were not "communications," the "contents" of which were not collected, and if there was any collection, it did not occur "in transmission." (*Id*. at 10-12.) Each argument is addressed in turn.

Defendants argue that Plaintiff cannot state a claim under Section 631 because Bloomindale's was a party to the communication and any alleged interception is permitted under the "party exception". (ECF No. 32 at 18.) Further, they argue that the exception provides equally for any claim premised on FullStory's actions, as they are merely a service provider to Defendants. (*Id*. at 19.) Plaintiff asserts that the party exception does not apply because the claim is based on derivative liability alleging that Defendants aided and abetted session replay providers, such as FullStory, who are not parties to the communications.[2] (ECF No. 33 at 19.)

"Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *In re Facebook, Inc., v Internet Tracking Litigation*, 956 F.3d 589, 607 (9th Cir. 2020). Only a third party can "eavesdrop" on a conversation, therefore a party to the communication is exempt from liability under Section 631. *See Warden v. Kahn*, 99 Cal.App.3d 805, 811 (Ct. App. 1979); *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Ct. App. 1975). "The party exception must be considered in the technical context of [a] case." *In re Facebook*, 956 F.3d at 607. District courts in California addressing the party

---

[2] Plaintiff appears to have abandoned any theory that Defendants violated Section 631 by directly accessing, intercepting, or learning the contents of Plaintiff's communications, and instead focus on Defendants' alleged actions of allowing third parties to access these communications.

exception have disagreed with Bloomingdale's argument: "[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly." *Revitch v. New Moosejaw*, LLC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). In contrast, another Northern District of California court held that a tracking service provider was considered a participant in the conversation under Section 631 because that defendant only stored user's data and did not use or resell that data, unlike the *Moosejaw* defendant. *See Graham v. Noom, Inc.,* 533 F.Supp.3d 823, 833–34 (N.D. Cal. Apr. 8, 2021). In *Graham*, the court reasoned that the tracking defendant provided a tool, like a tape recorder, and therefore was not an eavesdropper. *Id.* at 833.

Here, Plaintiff alleges that FullStory does not act as a passive recorder for use only by Defendants, but instead "each click, tap, URL visit, and every other interaction is sent in tiny little packets to that existing session at FullStory servers," and the collected information is used to "recreate website visitors' entire visits to www.bloomingdales.com." (ECF No. 27 at 2, 14.) Whether FullStory and other session replay providers act akin to a tape recorder or whether their actions are closer to "an eavesdropper standing outside the door" is a question of fact which is better answered after discovery into the session replay technical context of the case. *See In re Facebook,* 956 F.3d at 607.

Defendants also argue that Plaintiff failed to plead the acquisition of the "contents" of a "communication" while "in transit," as required for a claim under Section 631.

Here, Plaintiff has failed to adequately plead that the "contents" of her "communication" were intercepted. Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act where appropriate. *Saleh v. Nike, Inc.*, 562 F.Supp.3d 503, 517 (C.D. Cal. 2021). The Ninth Circuit has held that the "contents" of an online communication under federal wiretap law "refers to the intended message conveyed by the communication, and does not include record information regarding the

characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (contents transmitted by Facebook.com did not include a user's Facebook ID and browsing history when automatically gathered, but it could include messages that stated that information).

Here, Plaintiff alleges that her "interactions" on Defendants' website were tracked, such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." (ECF No. 27 at 14.) The Court finds that these interactions are more akin to the "record" information that the Ninth Circuit has held not to be contents of a communication. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also United States v. Reed*, 575 F.3d 900, 917 (9th Cir.2009) (information about a telephone call's "origination, length, and time" was not "contents" for purposes of § 2510(8), because it contained no "information concerning the substance, purport or meaning of [the] communication"). Accordingly, Defendants' motion to dismiss Plaintiff's claim for violation of Section 631 is granted with leave to amend. *See DeSoto*, 957 F.2d at 658.

### b. Second Cause of Action- Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

In assessing the viability of the plaintiff's claim for intrusion upon seclusion under California common law, the Ninth Circuit explained that "[t]he existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To determine whether a reasonable expectation of privacy exists, the Court considers "whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Id.* at 601-602. This question

depends on "a variety of factors, including the customs, practices, and circumstances surrounding defendant's particular activities." *Id*. at 602.

In *Facebook*, the court found that the plaintiffs had a cognizable privacy interest in browsing data surreptitiously collected by Facebook across the internet after the user had logged out of his Facebook account. *Id*. at 602-603. In contrast, here Plaintiff failed to suggest that the session replay provider tracked her data outside the Bloomgdales.com website. Courts have been unwilling to find a cognizable privacy interest in browsing data from users on Defendant's own website. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). This Court agrees with this approach and declines to find a privacy interest in Plaintiff's interactions with Defendants' own website when they choose to use that website. Accordingly, Defendants' motion to dismiss Plaintiff's claim for intrusion upon seclusion is granted with leave to amend. *See DeSoto*, 957 F.2d at 658.

### c. Equitable Relief

Defendants argue that Plaintiff lacks standing to seek injunctive or other equitable relief because Plaintiff has not plead inadequacy of legal remedies, and because she does not and cannot allege that she will again visit the Bloomindale's website without knowing about its use of session replay technology, she cannot be wronged again in the manner alleged in the amended complaint. (ECF No. 32 at 23-24).

"[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. U.S.*, 569 F.3d 956, 963 (9th Cir. 2009). A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). However, at the pleading stage, the Plaintiff can plead conflicting theories in the alternative under Fed. R. Civ. P. 8(a)(3) and need not expressly seek either damages or equitable relief. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015). However, Plaintiff fails to plead that a remedy at law is inadequate, and therefore cannot seek equitable relief.

Alternatively, even if Plaintiff had plead the inadequacy of legal relief, Plaintiff lacks Article III standing to bring a claim for injunctive relief. To successfully assert a claim for injunctive relief, a plaintiff must contend that, despite knowledge of the asserted violative conduct, he or she may suffer an "actual and imminent" threat of future harm. *See Davidson v. Kimberley-Clark Corporation*, 889 F.3d 956, 969 (9th Cir. 2018). The harm complained of is being recorded "without consent." (ECF No. 27 at 22-23.) Plaintiff's continued use of Defendants' website, now that Plaintiff has notice of Defendants' use of session replay code, would constitute consent to any recording. *See United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996). Plaintiff therefore has no standing to seek injunctive relief.

Plaintiff asserts that she still has standing under *Davidson v. Kimberley-Clark Corporation*, which held that a consumer Plaintiff may still have standing to seek injunctive relief after learning that advertising was false because they otherwise would not be able to rely on the product's future advertising or labelling, despite the fact that the product may be improved such that the advertising is no longer false. 889 F.3d at 969-970. Here, in contrast, the reason Plaintiff does not have standing is that future use of the website, while knowing that Defendants use session replay software, would equate consent to being recorded, therefore negating an essential element of the CIPA claim. *See* Cal. Penal Code § 631(a) (recording "…*without the consent* of all parties to the communication" violates CIPA). Therefore, *Davidson* is distinguishable, and it is Plaintiff's future consent if she chooses to go back to the website that alludes Article III standing.

As this defect could not be cured with additional amendment, Plaintiff's claims are dismissed to the extent that they seek injunctive relief without leave to amend. *DeSoto*, 957 F.2d at 658 (Leave to amend not necessary when doing so would be futile.). To the extent that Plaintiff seeks equitable relief other than injunctive relief, Plaintiff's claims are dismissed, with leave to amend. *Id*.

### IV. CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is DENIED. Defendants' motion to dismiss for failure to state a claim is GRANTED. Leave to amend is GRANTED, except as to Plaintiff's claims for injunctive relief. If Plaintiff wishes to file an amended complaint, she must do so on or before February 9, 2024.

**IT IS SO ORDERED.**

Dated: January 25, 2024

_____
Hon. M. James Lorenz
United States District Judge